**14-7196**

_____

# United States Court of Appeals For the District of Columbia Circuit

_____

**ANITA K. WARREN, *et al*.**

*Appellants*

**v.**

**DISTRICT TITLE**

*Appellee*

_____

**APPEAL OF PRELIMINARY INJUNCTION
OPENING BRIEF**

_____

Matthew August LeFande
Attorney at Law PLLC
4585 North 25th Road
Arlington VA 22207
Tel: (202) 657-5800
Fax: (202)318-8019
email: matt@lefande.com
Attorney for the Appellants
DC Bar #475995

STATEMENT REGARING CORPORATE APPELLEE

At the December 12, 2014 District Court hearing, the Appellee's counsel identified Steven Sushner as the President of District Title. Hr.'g Tr. at 2. The Appellants have no further information regarding the ownership or officers of the Appellee.  There are no other corporate parties to this appeal.

STATEMENT OF JURISDICTION

This Court shall have jurisdiction of appeals of the United States District Court for the District of Columbia for granting of a Preliminary Injunction.   28 U.S.C. § 1292 (a)(1).  The District Court ordered the Preliminary Injunction on December 15, 2014.  J.A. 138.  The Notice of Appeal was made on the following day.  J.A. 157.

# Table of contents

I.     Table of Authorities...................................................................ii

II.    Introduction..........................................................................1

III.   Statement of Facts..................................................................1

IV.    Summary of the Argument...................................................1

V.     Argument...............................................................................5

       1.     Lack of jurisdiction is a bar to injunctive relief.........................5

       2.     Standard for a preliminary injunction.........................................7

       3.     The Appellee lacks constitutional standing...............................8

       4.     The District Court could not ignore evidence of lack of service.
              Absent personal jurisdiction over Appellant Day, the Court
              could not impose a preliminary injunction..............................10

              i.     The was no timely service of process over Day.............10

              ii.    The Superior Court lacked subject matter jurisdiction
                     over Day..........................................................................13

       5.     All claims for conversion of trover fail to both Appellant.......18

       6.     Any generic equitable claims fail as to both Appellants..........21

       7.     The District Court's authority to proceed is defeated by the
              arbitration clause........................................................................23

       8.     The Appellant failed to demonstrate it will be irreparably
              harmed absent this injunctive relief...........................................25

9.    An injunction demanding the complete cessation of all financial
      activity of two persons is profoundly harmful to them.............28

10.   The granting of an injunction was not in the public's interest. .29


VI.   Conclusion ..........................................................................30

Certificate of Compliance...............................................................31

Certificate of Service.....................................................................31

## I.    Table of Authorities

**Cases**

*4934, Inc. v. District of Columbia Dep't of Employment Services.,*
    605 A.2d 50 (D.C. 1992)................................................................21-22

*Arkansas Dairy Coop., Inc. v. United States Dep't of Agric.,*
    576 F. Supp. 2d 147 (D.D.C. 2008)....................................................28

*Armenian Assembly of Am., Inc. v. Cafesjian,*
    597 F. Supp. 2d 128 (D.D.C. 2009)....................................................22

*Barnes v. Irving Trust Co.,*
    290 F. Supp. 116 (S.D.Tex. 1968)......................................................16

*Baur v. Veneman,*
    352 F.3d 625 (2d Cir. 2003)..................................................................9

*Beecher v. Wallace,*
    381 F.2d 372 (9th Cir. 1967)..............................................................16

*Bularz v. Prudential Ins. Co.,*
    93 F.3d 372 (7th Cir. 1996)................................................................28

*Coleman v. American Export Isbrandtsen Lines, Inc.,*
    405 F.2d 250 (2d Cir. 1968)..........................................................16-17

*Colliton v. Cravath, Swaine & Moore LLP,*
    2008 U.S. Dist. LEXIS 74388 (S.D.N.Y. Sept. 24, 2008).................17

\* *Commodity Futures Trading Commission v. Nahas,*
    738 F.2d 487 (D.C. Cir. 1984)............................................................13

*Community for Creative Non-Violence v. Pierce,*
    814 F.2d 663 (D.C. Cir. 1987)............................................................27

*Crane v. Carr,*
    814 F.2d 758 (D.C. Cir. 1987)............................................................15

Cases marked with an asterisk are those upon which we chiefly rely.

*Curaflex Health Servs. v. Bruni, P.C.,*
    877 F. Supp. 30 (D.D.C. 1995)............................................................18

*Davis v. S. Energy Homes, Inc.,*
    305 F.3d 1268 (11th Cir. 2002)......................................................23-24

*DiBella v. Hopkins,*
    403 F.3d 102 (2d Cir. 2005)...............................................................27

*District of Columbia v. Group Insurance Administration,*
    633 A.2d 2 (D.C. 1993)..................................................................25-26

*Duggan v. Keto,*
    554 A.2d 1126 (D.C. 1989)................................................................18

*Eckerd Corp. v. J&S, Inc.,*
    647 F. Supp. 2d 388 (D.N.J. 2009)....................................................10

*Edwards v. Ocwen Loan Servicing, LLC,*
    13-cv-709 RJL (D.D.C. March 5, 2014).............................................20

*Epps v. U.S. Capitol Police Bd.,*
    719 F. Supp. 2d 7 (D.D.C. 2010).........................................................7

*Ficken v. AMR Corp.,*
    578 F. Supp. 2d 134 (D.D.C. 2008)...................................................19

*First Chicago Int'l v. United Exchange Co.,*
    836 F.2d 1375 (D.C. Cir. 1988)........................................................15

*Franchise Tax Bd. v. Alcan Aluminium,*
    493 U.S. 331 (1990)...........................................................................9

*Frank Emmet Real Estate, Inc. v. Monroe,*
    562 A.2d 134 (D.C. 1989).................................................................13

*Freight Terminals, Inc. v. Ryder System, Inc.,*
    461 F.2d 1046 (5th Cir. 1972)..........................................................16

Cases marked with an asterisk are those upon which we chiefly rely.

*FW/PBS, Inc. v. Dallas,*
        493 U.S. 215 (1990)..........................................................................9

*Gen. Guar. Ins. Co. v. Parkerson,*
        369 F.2d 821 (5th Cir. 1966)...........................................................17-18

*Gladstone, Realtors v. Village of Bellwood,*
        441 U.S. 91 (1979)............................................................................9

*Grace v. American Central Ins. Co.,*
        109 U.S. 278 (1883)..........................................................................9-10

*Grand Lodge of Fraternal Order of Police v. Ashcroft,*
        185 F. Supp. 2d 9 (D.D.C. 2001)......................................................7

*Granite Partners, L.P. v. Bear, Stearns & Co.,*
        17 F. Supp. 2d 275 (S.D.N.Y. 1998)................................................23

*Green v. Niles,*
        2012 U.S. Dist. LEXIS 40297 (S.D.N.Y. Mar. 23, 2012).................17

*Green Tree Fin. Corp. v. Randolph,*
        531 U.S. 79 (2000)...........................................................................23

*Griffin Indus. v. Irvin,*
        496 F.3d 1189 (11th Cir. 2007)...........................................................17

*GTE New Media Servs. v. BellSouth Corp.,*
        199 F.3d 1343 (D.C. Cir. 2000).........................................................15

*Halcomb v. Office of the Senate Sergeant-at-Arms of the U.S. Senate,*
        209 F. Supp. 2d 175 (D.D.C. 2002)...................................................6

*Hercules & Co. v. Beltway Carpet Serv., Inc.,*
        592 A.2d 1069 (D.C. 1991)................................................................24

Cases marked with an asterisk are those upon which we chiefly rely.

*Hollingsworth v. Duff,*
      444 F. Supp. 2d 61 (D.D.C. 2006).......................................................6-7

*Jean-Laurent v. Lawrence,*
      2013 U.S. Dist. LEXIS 38004 (S.D.N.Y. Mar. 19, 2013) ................17

*King Bridge Co. v. Otoe County,*
      120 U.S. 225 (1887)........................................................................9-10

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
      511 U.S. 375 (1994)..........................................................................6-7

*LaBarre v. Gold,*
      520 So. 2d 1327 (Miss. 1987)............................................................21

*Lambert Run Coal Co. v. Baltimore & Ohio R.R. Co.,*
      258 U.S. 377 (1922)..........................................................................5-6

*Lamkin v. Morinda Props. Weight Parcel, LLC,*
      440 Fed. Appx. 604 (10th Cir. 2011)..................................................23

*Liberty Lobby, Inc. v. Dow Jones & Co.,*
      838 F.2d 1287 (D.C. Cir. 1988)..........................................................28

*Lujan v. Defenders of Wildlife,*
      504 U.S. 555 (1992)..............................................................................6

*Lyons v. Misskelly,*
      759 F. Supp. 324 (S.D. Miss. 1990)...................................................18

*Macharia v. United States,*
      334 F.3d 61 (D.C. Cir. 2003)................................................................7

*Mansfield C. & L. M. R. Co. v. Swan,*
      111 U.S. 379 (1884)............................................................................10

*Marcone v. Penthouse Int'l Mag. for Men,*
      754 F.2d 1072 (3d Cir. 1985)........................................................27-28

Cases marked with an asterisk are those upon which we chiefly rely.

*Masonite Corp. v. Williamson,*
  404 So. 2d 565 (Miss. 1981)...............................................................21

*McKoy-Shields v. First Washington Realty, Inc.,*
  11-cv-01419 (RLW) (D.D.C. March 30, 2012)....................................6

*McManus v. District of Columbia,*
  530 F. Supp. 2d 46 (D.D.C. 2007).......................................................12

* *McNamara v. Picken,*
  950 F. Supp. 2d 193 (D.D.C. 2013).....................................................19

*Moldea v. New York Times Co.,*
  15 F.3d 1137 (D.C. Cir. 1994).............................................................27

*Muhammad v. FDIC,*
  751 F. Supp. 2d 114 (D.D.C. 2010)....................................................6-7

*Napier v. Hawthorn Books, Inc.,*
  449 F. Supp. 576 (E.D. Mich. 1978).....................................................5

*News World Commc'ns, Inc. v. Thompsen,*
  878 A.2d 1218 (D.C. 2005)..................................................................22

*O'Callaghan v. District of Columbia,*
  741 F. Supp. 273 (D.D.C. 1990)..........................................................18

*Palm Beach Strategic Income, LP v. Stanley P. Salzman, P.C.,*
  2011 U.S. Dist. LEXIS 46867 (E.D.N.Y. May 2, 2011)....................17

*Palmer v. City Nat'l Bank of W. Va.,*
  498 F.3d 236 (4th Cir. 2007)..................................................................6

* *Prickett v. New York Life Ins. Co.,*
  896 F. Supp. 2d 236 (S.D.N.Y. 2012)..................................................23

*Republic of Haiti v. Crown Charters, Inc.,*
  667 F. Supp. 839 (S.D. Fla. 1987)........................................................19

Cases marked with an asterisk are those upon which we chiefly rely.

*St. Thomas - St. John Hotel & Tourism Ass'n v. Virgin Islands,*
     357 F.3d 297 (3d Cir. 2004)................................................................28

*Schmidt v. U.S. Capitol Police Bd.,*
     826 F. Supp. 2d 59 (D.D.C. 2011)....................................................5, 7

*Scherer v. Laborers' Intern. Union of North America,*
     746 F. Supp. 73 (N.D. Fla. 1988)........................................................19

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.,*
     402 F.3d 1198 (Fed. Cir. 2005)...........................................................10

*Sea Containers Ltd. v. Stena AB,*
     890 F.2d 1205 (D.C. Cir. 1989)............................................................7

*Serono Lab v. Shalala,*
     158 F.3d 1313 (D.C. Cir. 1998)............................................................7

*Shorts v. Parsons Transp. Group, Inc.,*
     679 F. Supp. 2d 63 (D.D.C. 2010)......................................................24

*Simmons v. Peavy-Welsh Lumber Co.,*
     113 F.2d 812 (5th Cir. 1940)...............................................................18

*Unilogic, Inc. v. Burroughs Corp.,*
     10 Cal. App. 4th 612, 628 (1992).........................................................22

 *  *United Mine Workers v. International Union, United Mine Workers,*
     412 F.2d 165 (D.C. Cir. 1969)............................................................28

*U.S. East Telecomm., Inc. v. U.S. West Commc'n Servs, Inc.,*
     38 F.3d 1289 (2d Cir.1994)................................................................23

*United States v. Ferrara,*
     54 F.3d 825 (D.C. Cir. 1995).............................................................15

*Univ. of Texas v. Camenisch,*
     451 U.S. 390 (1981)............................................................................28

Cases marked with an asterisk are those upon which we chiefly rely.

*Vallely v. Northern Fire & Marine Ins. Co.*,
    254 U.S. 348 (1920)...........................................................................13

*Valley Forge Christian College v. Americans United for Separation of
Church & State, Inc.*,
    454 U.S. 464 (1982).............................................................................9

 * *Vila v. Inter-Am. Inv., Corp.*,
    570 F.3d 274 (D.C. Cir. 2009)......................................................21-22

*Virginia Petroleum Jobbers Ass'n v. Federal Power Commission*,
    259 F.2d 921 (D.C. Cir. 1958)....................................................25, 26

*Warth v. Seldin*,
    422 U.S. 490 (1975)..............................................................................9

*Washington Metro Area Transit Comm'n v. Holiday Tours, Inc.*,
    559 F.2d 841 (D.C. Cir. 1977).............................................................8

*Wieck v. Sterenbuch*,
    350 A.2d 384 (D.C. 1976)...................................................................25

 * *Wisconsin Gas Co. v. Federal Energy Regulatory Com.*,
    758 F.2d 669 (D.C. Cir. 1985)............................................................26

*Woodland L.P. v. Wulff*,
    868 A.2d 860 (D.C. 2005)...................................................................24

 * *Zirkle v. District of Columbia*,
    830 A.2d 1250 (D.C. 2003)................................................................25

*Zurich Ins. Co. v. Logitrans, Inc.*,
    297 F.3d 528 (6th Cir. 2002)..............................................................10

Cases marked with an asterisk are those upon which we chiefly rely.

**Statutes**
28 U.S.C.A. § 1448...................................................................................16

D.C. CODE §§ 13-401.............................................................................13

D.C. CODE §§ 13-422.............................................................................13

D.C. CODE §§ 13-423.........................................................................13-16

D.C. CODE §§ 13-434.............................................................................13

**Court Rules**
FED. R. CIV. P. 12...........................................................................5-7, 12

D.C. SUP. CT. R. CIV. P. 4...........................................................10-11, 16

**Treatises**
Jay A. Grenig,
    ALTERNATIVE DISPUTE RESOLUTION (3d ed. 2005)..............................23

18 AM. JUR. 2D (1985)..........................................................................18-19

Wright and Miller,
    FEDERAL PRACTICE AND PROCEDURE (1969).......................................16

## II.    Introduction

The District Court has entered a Preliminary Injunction encumbering the entirety of the personal and business financial affairs of the Appellants. J.A. 138.  The Appellee plainly fails to demonstrate any irreparable harm which could justify this profoundly burdensome and extraordinary remedy. Furthermore, a multitude of defects in jurisdiction compel dismissal, not the imposition of an injunction.  Therefore, the injunction must be vacated and the matter dismissed.

## III.    Statement of Facts

The Appellee alleges that it unilaterally overpaid Appellant Anita K. Warren in a real estate settlement transaction.  The Appellee otherwise alleges such overpayment were funds due to Warren's mortgage company, Wells Fargo.  J.A. 18.  The Appellee alleges no fraud or any affirmative act by any party led to such overpayment.   The Appellee does not allege that Appellant Timothy Day was a party to this transaction or the related real estate contract other than to be physically present at the closing and to later relay messages to his mother from the Appellee.

The Appellee alleges in this lawsuit that Day resides in Scotland, Maryland, a location eighty miles from this Courthouse.  The Appellee does

not allege that Day is domiciled in, or maintains his principal place of business in, the District of Columbia. The Appellee's sole allegation regarding Day's conduct within the District of Columbia is that at some unspecified time in the past, Day conducted a business out of the real property which was later the subject of the real estate transaction.

The Appellee filed suit in the Superior Court case on September 2, 2014. J.A. 10. The Appellee claimed service of process upon Day occurred on September 6, 2014. The Appellee initially claimed that it made service to a "John Doe" who the process server said was a "Co-resident" with Appellant Day. J.A. 73. On November 14, 2014, the Superior Court denied a default against Day, stating there was defective service of process upon him. J.A. 75. The Appellee subsequently filed a revised affidavit of service claiming that the John Doe "stated he could accept service of the documentation and give them to Timothy Day." J.A. 74. The Appellants tendered to the Court two separate declarations that no service of process was attempted at Day's home on September 6, 2014 and that no person matching the description of John Doe was present that day at the home. J.A. 136, 137.

Appellant Anita K. Warren resides at 21895 Pegg Road #211, Lexington Park, Maryland. J.A. 26. 21895 Pegg Road is a senior living

facility located 65 miles from this courthouse.  Warren is 64 years old.

Warren suffers from kidney failure, heart disease and Chronic Inflammatory

Demyelinating Polyneuropathy, a neurological disorder characterized by

progressive weakness and impaired sensory function in the legs and arms.

Warren is largely confined to a wheelchair.  Warren is the sole Appellant

with any kind of contractual or transactional relationship alleged with the

Appellee.  See J.A. 22.

The Appellee possesses no judgment, foreign or domestic, against any

party to this lawsuit.  The Appellee has represented that it has not paid the

mortgage company for the funds purportedly due to it at closing.  The

Appellants have subsequently learned that the mortgage company is

initiating foreclosure proceedings on the same property for non-payment of

the mortgage.  The Appellee has presented no evidence that it would be

contractually obligated to pay the mortgage company if the Appellants did

not.

## IV.    Summary of the Argument

Appellee District Title acted as a facilitator of a real estate transaction

involving Appellant Anita Warren and mortgagor company Wells Fargo

Bank.  Following District Title's claimed incorrect disbursement of

4

settlement funds purportedly to the benefit of Warren and the detriment of

Wells Fargo Bank, District Title sued Warren in District of Columbia

Superior Court for funds it claimed remained due to Wells Fargo Bank.

Appellant Timothy Day was not a party to the transaction and lived in

Maryland at all times relevant to the transaction.  Where the claim amounted

to funds due to Wells Fargo Bank and not District Title, District Title was

without constitutional standing to sue either Warren or Day.  As there was

no harm to District Title whatsoever, there was no irreparable harm to justify

any injunction.

        In removal from the Superior Court under diversity jurisdiction, the

District Court had no greater jurisdiction than derived from the Superior

Court.  As Day did not reside in the District of Columbia, was not a party to

the transaction and committed no tort in the District, the District Court was

without jurisdiction over him under the District's long arm statute.  The

statutory period to effect service over Day had lapsed and no service had

been made upon him.  The injunction as to day was without jurisdiction, was

void and could not be rehabilitated.

## V.    Argument

### 1.    Lack of jurisdiction is a bar to injunctive relief.

If a court lacks subject matter jurisdiction to entertain a claim, it must dismiss that claim, including demands for injunctive relief.  See FED. R. CIV. P. 12(b)(1), 12(h)(3).  Where a defendant files a motion to dismiss under both Rule 12(b)(1) and Rule 12(b)(6), "the court must first examine the Rule 12(b)(1) challenges" because a dismissal for lack of subject matter jurisdiction renders "the [other] accompanying defenses and objections [] moot[.]"  *Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 64 (D.D.C. 2011) (citations and internal quotation marks omitted).  "Before a court can exercise jurisdiction... the party must be brought before the court -- in other words, the court must *acquire* jurisdiction.  The acquisition of jurisdiction is generally accomplished by service of process."  *Napier v. Hawthorn Books, Inc.*, 449 F. Supp. 576, 579 (E.D. Mich. 1978) (dismissing case already removed by Defendants from state court but claiming insufficient service of process).

"The jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction. If the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction."  *Lambert Run*

*Coal Co. v. Baltimore & Ohio R.R. Co.*, 258 U.S. 377, 382 (1922).   See also *Palmer v. City Nat'l Bank of W. Va.*, 498 F.3d 236, 244 (4th Cir. 2007) ("The derivative-jurisdiction doctrine arises from the theory that a federal court's jurisdiction over a removed case derives from the jurisdiction of the state court from which the case originated.").   "To determine whether this Court lacks subject matter jurisdiction by virtue of the doctrine of derivative jurisdiction, the threshold determination is whether, prior to removal, the Superior Court for the District of Columbia had jurisdiction of the subject matter or of the parties." *McKoy-Shields v. First Washington Realty, Inc.*, 11-cv-01419 (RLW) at 2 (D.D.C. March 30, 2012).   If the Superior Court did not, the District Court cannot "acquire" jurisdiction upon removal, even if Plaintiff could have filed his complaint in federal court in the first instance. *Lambert Run Coal*, 258 U.S. at 382.

A plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Halcomb v. Office of the Senate Sergeant-at-Arms of the U.S. Senate*, 209 F. Supp. 2d 175, 176 (D.D.C. 2002).   Indeed, when it comes to Rule 12(b)(1), it is "'presumed that a cause lies outside [the federal courts'] limited jurisdiction,' unless the plaintiff establishes by a preponderance of the evidence that the Court possesses jurisdiction[.]"

7

*Muhammad v. FDIC*, 751 F. Supp. 2d 114, 118 (D.D.C. 2010) (first

alteration in original) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*,

511 U.S. 375, 377 (1994) and citing *Hollingsworth v. Duff*, 444 F. Supp. 2d

61, 63 (D.D.C. 2006)).  "[T]he court must scrutinize the plaintiff's

allegations more closely when considering a motion to dismiss pursuant to

Rule 12(b)(1) than it would under . . . Rule 12(b)(6)."  *Schmidt*, 826 F. Supp.

2d at 65 (citing *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir.

2003), *Epps v. U.S. Capitol Police Bd.*, 719 F. Supp. 2d 7, 12 (D.D.C. 2010),

and *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d

9, 13 (D.D.C. 2001)).


### 2.    Standard for a preliminary injunction.

The legal standard a plaintiff must meet in moving for a Preliminary

Injunction is "[a] court considering a plaintiff's request for a preliminary

injunction must examine whether: (1) there is a substantial likelihood

plaintiff will succeed on the merits; (2) plaintiff will be irreparably injured if

an injunction is not granted; (3) an injunction will not substantially injure the

other party; and (4) the public interest will be furthered by the injunction."

*Serono Lab v. Shalala*, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998).  See *Sea

Containers Ltd. v. Stena AB*, 890 F.2d 1205, 1208 (D.C. Cir. 1989);

*Washington Metro Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977).

There are profound problems with the case against the Appellants. If the case fails against them, there can be no injunction. If there is no claim against a particular Defendant, there can be no injunction against that Defendant, even if an injunction may stand against another.

**3.      The Appellee lacks constitutional standing.**

This exchange between Appellants' counsel and the Court at the December 12, 2014 hearing was a curious one.

> THE COURT:   Well, you don't dispute, no one disputes the $293,514.44 necessary to pay off the lender, Wells Fargo, was transferred to the defendant, Ms. Warren, by mistake.
>
> MR. LeFANDE: Well, that's a fantastic question. I think that's a wonderful question. I think that's the question that we -- that brings us to a question that says who's injured here? Who has the Article III standing here? Is it these folks or is it Wells Fargo? Because --
>
> THE COURT: Article III standing? We're here because you removed on grounds of diversity. We're done with Article III, unless you want to go back to Judge Dixon.

December 12, 2014 Hr'g Tr. At 51-52.

We aren't "done with Article III" by any means.   Article III restricts federal courts to deciding "Cases" and "Controversies." To establish Article III standing, a plaintiff must allege, and ultimately prove, that he has

suffered a cognizable injury-in-fact that is fairly traceable to the challenged

action of the defendant, and which is likely to be redressed by the requested

relief.  *Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003).  Article III

"requires the party who invokes the court's authority to 'show that he

personally has suffered some actual or threatened injury as a result of the

putatively illegal conduct of the defendant'".  *Franchise Tax Bd. v. Alcan*

*Aluminium*, 493 U.S. 331, 335 (1990) (quoting *Valley Forge Christian*

*College v. Americans United for Separation of Church & State, Inc.,* 454

U.S. 464, 472 (1982) (quoting *Gladstone, Realtors* v. *Village of Bellwood,*

441 U.S. 91, 99 (1979))).  "[A] plaintiff must show that he *personally* has

suffered an actual or threatened injury".  *Franchise Tax Bd.*, 493 U.S. at 335

(emphasis in original).  "[T]he plaintiff generally must assert his own legal

rights and interests, and cannot rest his claim to relief on the legal rights or

interests of third parties." *Id*. (quoting *Warth v. Seldin*, 422 U.S. 490, 499

(1975)).

Contrary to the District Court's unexplained cursory dismissal of

counsel's argument above, none of these constitutional requirements are

abrogated by exercise of removal in diversity jurisdiction and this Court

must continually consider if such requirements are present.  *FW/PBS, Inc. v.*

*Dallas*, 493 U.S. 215, 231 (1990) (quoting, *inter alia*, *Grace* v. *American*

*Central Ins. Co.*, 109 U.S. 278, 284 (1883); *Mansfield C. & L. M. R. Co.* v.

*Swan*, 111 U.S. 379, 382 (1884); *King Bridge Co.* v. *Otoe County*, 120 U.S.

225, 226 (1887)).

As the District Court clearly points out, ***it was Wells Fargo Bank that***

***was allegedly due the payoff for the mortgage at settlement***, not District

Title.  There has been no assignment of such debt and District Title is

without standing to sue on behalf of Wells Fargo otherwise.  See *Eckerd*

*Corp. v. J&S, Inc.*, 647 F. Supp. 2d 388 (D.N.J. 2009).  Absent the

Appellee's standing to sue, *i.e.*, money due to District Title was not paid to

District Title at settlement, this defect cannot be later cured and the case

instead must be dismissed.  See*, e.g., Schreiber Foods, Inc. v. Beatrice*

*Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005); *Zurich Ins. Co. v.*

*Logitrans, Inc.*, 297 F.3d 528, 531-32 (6th Cir. 2002).


**4.    The District Court could not ignore evidence of lack of
service.  Absent personal jurisdiction over Appellant Day,
the Court could not impose a preliminary injunction.**

**i.  There was no timely service of process over Day.**

District of Columbia Superior Court Civil Rule 4(m) requires that

service be accomplished within sixty days of the filing of the complaint.

Prior to the expiration of the foregoing time period, a motion may be

made to extend the time for service. The motion must set forth in

detail the efforts which have been made, and will be made in the
future, to obtain service. The Court shall extend the period for such
time as may be warranted by circumstances set forth in the motion.
Failure to comply with the requirements of this Rule shall result in the
dismissal without prejudice of the complaint.

D.C. SUP. CT. R. CIV. P. 4(m).

The Appellee failed to effectuate proper service upon Appellant Day

within the sixty day time limitation of Rule 4(m) and further failed to seek

additional time to remedy its defects in service within that same time

limitation.  Under Rule 4(m), the matter should have been dismissed.

Federal Rule 4(m), which allows 120 days to effect service or obtain a
waiver thereof, has been replaced entirely with the language
previously contained in Superior Court Rule 4(j).  That provision
allowed 60 days for effecting service so that the case could proceed to
an Initial Scheduling Conference within 90-120 days of filing the
complaint...

D.C. SUP. CT. R. CIV. P. 4 *comment*.

The District Court relied solely on its self-imposed deadline to ignore

the Appellants' two affidavits affirmatively stating that no service was

attempted on September 6, 2014 at Appellant Day's home and that no person

was authorized to accept service on his behalf.  J.A. 143-145.  The District

Court does not have the luxury to "need not consider this untimely filing".

*Id*. at 146.  A federal court's jurisdiction is limited in multiple ways.  The

law requires that a federal court carefully examine its own jurisdiction

anytime it appears to be in question.

> AFGE asserts that it "received the summons and complaint in this matter on April 2, 2007, when an unknown male personally delivered a copy of the summons and complaint to AFGE employee Carolyn Williams." Ms. Williams avers that she is a Labor Relations Assistant for AFGE, and further avers "I am not, nor have I ever been, authorized to receive service of process on behalf of [AFGE]." As Plaintiffs present no evidence to indicate that they have validly served AFGE by serving an officer, agent, or individual authorized to accept service, the Court shall grant AFGE's motion to dismiss pursuant to Rule 12(b)(5).

*McManus v. District of Columbia*, 530 F. Supp. 2d 46, 66-67 (D.D.C. 2007)

(footnotes, citations omitted).

The Appellee claims that an unidentified person was authorized to accept service on behalf Appellant Day and made such service on September 6, 2014. Day in turn tendered two affidavits, first demonstrating that no person had ever attempted service at the Maryland address, second that he never authorized any person to accept service on his behalf and third, that no person matching the description of the Appellee's John Doe was ever present in his home on that date. J.A. 136-137. The Appellee's service of process on Appellant Day remains defective for the very same reasons it was in *McManus*.

Substituted service of process, more than six months after the initial failed service of process, ECF Docket # 31, 33-34, does not retroactively rehabilitate the lack of personal jurisdiction at the time of imposition of the Preliminary Injunction. "Courts are constituted by authority and they can

not go beyond the power delegated to them. If they act beyond that authority, and certainly in contravention of it, their judgments and orders are regarded as nullities. They are not voidable, but simply void, and this even prior to reversal." *Commodity Futures Trading Commission v. Nahas*, 738 F.2d 487, 492 n.10 (D.C. Cir. 1984) (quoting *Vallely v. Northern Fire & Marine Ins. Co.*, 254 U.S. 348, 353-354 (1920)).

### ii.  The Superior Court lacked subject matter jurisdiction over Day.

"In 1970, as part of the Court Reorganization Act, a 'long-arm' statute was added to the D.C. Code to provide for 'civil jurisdiction and service outside the District of Columbia.'" *Frank Emmet Real Estate, Inc. v. Monroe*, 562 A.2d 134, 136-137 (D.C. 1989) (citing D.C. CODE §§ 13-401, 13-434 (1981)).   The Appellee does not allege that Appellant Day is "domiciled in, organized under the laws of, or maintaining his... principal place of business in, the District of Columbia", so D.C. Code § 13-422 is inapplicable.   The remaining operative section, 13-423, also falls short as to confer subject matter jurisdiction as to the Appellee's claims.

> A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's --
>
> (1) transacting any business in the District of Columbia;
>
> (2) contracting to supply services in the District of Columbia;

(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

(5) having an interest in, using, or possessing real property in the District of Columbia;

(6) contracting to insure or act as surety...; or

(7) [claim arising from marital or parent and child relationship].

D.C. CODE § 13-423(a).

"When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him." *Id*. (b). The Appellee's sole argument in this regard is that Day previously ran a business out of the real property which was later the subject of the closing in which the Appellee inadvertently disbursed too much money to Appellant Warren and this somehow implicates Section (a) (4). Curiously, the District Court and the Appellee's appear to largely rely upon Day's old District of Columbia driver's license to claim that he has a sufficient nexus to the District of Columbia to implicate D.C. Code § 13-423(a). J.A. 77.

> Section (a)(1)'s "transacting any business" clause generally has been
> interpreted to be coextensive with the Constitution's due process
> requirements and thus to merge into a single inquiry. See [*United
> States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995)]. Section (a)(4)
> has been construed more narrowly, however. See *Crane v. Carr*, 814
> F.2d 758, 762 (D.C. Cir. 1987) ("The drafters of this provision
> apparently intended that the (a)(4) subsection would not occupy all of
> the constitutionally available space…. This court has explicitly noted,
> moreover, that (a)(4) of the D.C. long-arm statute may indeed stop
> short of the outer limit of the constitutional space.").

*GTE New Media Servs. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir.

2000) (parallel citation omitted).

> At best, GTE has provided only conclusory statements and intimations
> to buttress its assertion that it lost advertising revenues as a result of
> the defendants' actions. These are not enough. *Cf. First Chicago Int'l
> v. United Exchange Co.*, 836 F.2d 1375, 1378-79 (D.C. Cir. 1988)
> ("Conclusory statements … '[do] not constitute the *prima facie*
> showing necessary to carry the burden of establishing personal
> jurisdiction.' … The 'bare allegation' of conspiracy or agency is
> insufficient to establish personal jurisdiction." (citation omitted)). We
> will neither assume nor infer that the alleged conspiracy had
> *substantial effects* of the sort alleged by GTE, because to do so would
> be to assume or infer the answer to the very question that is before us.

*GTE New Media Servs.*, 199 F.3d at 1349 (emphasis *sic*, parallel citation

omitted).

The Appellee claims simply that Appellant Day received funds that

his mother gave him in Maryland and subsequently negotiated them in

Maryland.  The Appellee can contrive no connection between Day's prior

practice as a CPA in his mother's home and his later purported expenditure

of money gifted from her.  There simply is none.  Absent a relationship

between Day's prior business in the District of Columbia and the injury claimed by Appellee, there can be no subject matter jurisdiction over Day within D.C. Code § 13-423.

Subsequent purported service of process after removal could not rehabilitate this lack of subject matter jurisdiction over Day. "Although the district court must look to state law to ascertain whether service was properly made prior to removal, this does not foreclose service being effected in the district court. 28 U.S.C.A. § 1448. See 4 Wright and Miller, FEDERAL PRACTICE AND PROCEDURE § 1082 (1969). It would have served no useful purpose for the district court to have dismissed the action as to System only to have Freight Terminals refile the suit with the necessary allegations." *Freight Terminals, Inc. v. Ryder System, Inc.*, 461 F.2d 1046, 1052 (5th Cir. 1972) (citing *Beecher v. Wallace*, 381 F.2d 372, 373 (9th Cir. 1967); *Barnes v. Irving Trust Co.*, 290 F. Supp. 116, 117 (S.D.Tex. 1968).

However in the present case, such amendment would be futile, as new jurisdictional allegations against Day necessary to come into compliance with D.C. Code § 13-423 ***would be in complete conflict with those allegations already made by the Plaintiff,*** that Day's conduct occurred entirely in Maryland. "[A]lthough Rule 4(f) [now Rule 4(k)] provides for out-of-state service on certain defendants, such service will not be valid

unless they have enough contacts with the state of service to be subject to suit there." *Coleman v. American Export Isbrandtsen Lines, Inc.*, 405 F.2d 250, 253 (2d Cir. 1968).

A plaintiff cannot defeat a Motion to Dismiss "with allegations that are 'utterly irreconcilable' with past allegations." *Jean-Laurent v. Lawrence*, 2013 U.S. Dist. LEXIS 38004 (S.D.N.Y. Mar. 19, 2013) (quoting *Green v. Niles*, 2012 U.S. Dist. LEXIS 40297, at \*4-5 (S.D.N.Y. Mar. 23, 2012)). "Where a plaintiff blatantly changes his statement of the facts in order to respond to the defendant['s] motion to dismiss . . . [and] directly contradicts the facts set forth in his original complaint a court is authorized to accept the facts described in the original complaint as true." *Green*, at \*17 (quoting *Colliton v. Cravath, Swaine & Moore LLP*, 2008 U.S. Dist. LEXIS 74388, at \*19 (S.D.N.Y. Sept. 24, 2008) and citing *Palm Beach Strategic Income, LP v. Stanley P. Salzman, P.C.*, 2011 U.S. Dist. LEXIS 46867, at \*15-22 (E.D.N.Y. May 2, 2011) (declining to accept plaintiff's new allegations which conflicted with those in three previous versions of plaintiff's complaint and granting defendant's motion to dismiss)).

"Ironically, the lack of detail is not the problem here. Griffin's problem is not that it has said too little, but that it has said too much." *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007) (quoting *Gen.*

*Guar. Ins. Co. v. Parkerson*, 369 F.2d 821, 825 n.9 (5th Cir. 1966) ("This complaint is plagued not by what it lacks, but by what it contains. All of the paths to relief which the pleading suggests are blocked by the allegations and the attached documents themselves, without more."); *Simmons v. Peavy-Welsh Lumber Co.,* 113 F.2d 812, 813 (5th Cir. 1940) ("This is not a case where the plaintiff has pleaded too little, but where he has pleaded too much and has refuted his own allegations by setting forth the evidence relied on to sustain them. The appellant was not content to make a short and plain statement of the facts, but undertook to plead evidentiary facts in detail. . . . The litigant may be defeated by his own evidence, the pleader by his own exhibits; the appellant has become enmeshed in his own prolixity.")).

### 5. All claims for conversion or trover fail as to both Appellants.

Conversion is "any unlawful exercise of ownership, dominion or control over the personal property of another in denial or repudiation of his rights thereto." *Curaflex Health Servs. v. Bruni, P.C.*, 877 F. Supp. 30, 32 (D.D.C. 1995) (quoting *Duggan v. Keto*, 554 A.2d 1126, 1137 (D.C. 1989) and citing *O'Callaghan v. District of Columbia*, 741 F. Supp. 273, 279-80 (D.D.C. 1990)). Trover is merely an arcane term for conversion. *Lyons v. Misskelly*, 759 F. Supp. 324, 327 n.4 (S.D. Miss. 1990) (citing 18 AM. JUR.

2d § 1 (1985)).  "Conversion and trover extend only to intangible rights identified by a tangible document that is converted; [t]hus a plaintiff may bring a suit for conversion of a promissory note, a check, a bank book, or an insurance policy . . . but *not for conversion of a debt,* the good will of a business or an idea."  *McNamara v. Picken*, 950 F. Supp. 2d 193, 195 (D.D.C. 2013) (quoting *Ficken v. AMR Corp.*, 578 F. Supp. 2d 134, 143 (D.D.C. 2008) (internal quotation marks omitted))) (emphasis added).

"Money can be the subject of a conversion claim only if the plaintiff has the right to a specific identifiable fund of money." *Curaflex Health Servs.*, *supra* (citing *Scherer v. Laborers' Intern. Union of North America*, 746 F. Supp. 73, 84 (N.D. Fla. 1988)). "A cause of action for conversion, however, *may not be maintained to enforce a mere obligation to pay money*." *Curaflex Health Servs.*, *supra* (citing *Scherer*, 746 F. Supp. at 84; *Republic of Haiti v. Crown Charters, Inc.*, 667 F. Supp. 839, 845 (S.D. Fla. 1987)) (emphasis added).

By the Appellee's claims accepted as true for the purpose of this motion, there was some two hundred thousand dollars due to Warren at closing, regardless of the purportedly unpaid mortgage balance.  The Appellee herein is particularly careful to omit the cash balance it claims was properly due to Warren at closing, because this admits to the existence of a

larger pool of fungible cash funds and the Appellee cannot differentiate if
Day was paid from funds otherwise due to Warren at closing or the money it
claims it mistakenly paid Warren.  The Appellee makes yet another omission
in pleading as to the existence of other funds in Warren's possession ***prior to
closing***, which of course would have been also commingled with the
settlement proceeds <u>prior</u> to any claimed notice of the mistake by the
Appellee.  See *Edwards v. Ocwen Loan Servicing, LLC*,  13-cv-709 RJL at
17-18 (D.D.C. March 5, 2014).  ("A conversion claim cannot stand where,
as here, plaintiff is owed *at most* some unspecified, unidentified portion of a
larger pool of funds.")

All of this is completely fatal as to any conversion or trover claim
against the Appellants.  The Appellee does not begin to suggest that Warren
could not convey funds to her son which she rightfully received from the
transaction.  The District Court cannot suggest how it can now discriminate
between such funds and claw them back from Day.[1]  "Plaintiff's conversion
claim fails as a matter of law. In order to succeed on a claim for conversion,
a plaintiff must show that he owned or had a right to possess property which
was the subject of an unauthorized taking or the unauthorized exercise of

---

[1]  Indeed, the District Court's Order imposing a Preliminary Injunction does
nothing of the sort, it solely acts to profoundly inconvenience a mother and
son with debilitating health problems such that they may be badgered into
compliance without due process.

control by the defendant." *Lyons*, 759 F. Supp. at 327 (citing *LaBarre v. Gold*, 520 So. 2d 1327, 1330 (Miss. 1987); *Masonite Corp. v. Williamson*, 404 So. 2d 565, 567 (Miss. 1981)).  The District Court's decision to cursorily distinguish all of these authorities is completely bereft of authority in itself. ECF Docket # 21 at 14-15.

Further, the Appellee cannot claim that money due to it has been converted, as at best, that money remains due and owning to the mortgage company, not the Appellee settlement company.  The Appellee is suing to enforce rights solely of the mortgage company and remains without constitutional standing to do so.

### 6.     Any generic equitable claims fail as to both Appellants.

Likewise, if the District Court cannot discriminate between these funds and discern that Day received funds not rightfully alienated by Warren, a claim for unjust enrichment or any other generic equitable remedy against the Appellants must also fail.  "The District of Columbia recognizes unjust enrichment as a species of quasi contract that imposes, 'in the absence of an actual contract, . . . a duty . . . upon one party to requite another in order to avoid the former's unjust enrichment[,] . . . [and therefore] to permit recovery by contractual remedy in cases where, in fact, there is no contract.'"

*Vila v. Inter-Am. Inv., Corp.*, 570 F.3d 274, 279-80 (D.C. Cir. 2009)

(quoting *4934, Inc. v. District of Columbia Dep't of Employment Services.*,

605 A.2d 50, 55 (D.C. 1992)) (internal quotations omitted).  A party "states

a legally cognizable unjust enrichment claim when: (1) the plaintiff confers a

benefit on the defendant; (2) the defendant retains the benefit; and (3) under

the circumstances, the defendant's retention of the benefit is unjust."

*Armenian Assembly of Am., Inc. v. Cafesjian*, 597 F. Supp. 2d 128, 134

(D.D.C. 2009) (citing *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d

1218, 1222 (D.C. 2005)).  Unjust enrichment is a "legal fiction invented by

common law courts to permit recovery by contractual remedy in cases

where, in fact, there is no contract, but where circumstances are such that

justice warrants a recovery as though there had been a promise." *4934, Inc.*,

605 A.2d at 55.

> Contrary to the norm, the benefit and loss in this case are not
> necessarily coextensive... this is not a case in which one party is
> deprived of precisely what the other party gains and, more
> importantly, it is not a case in which the value of one party's loss
> necessarily equals the value of the other party's gain.

*Unilogic, Inc. v. Burroughs Corp.*, 10 Cal. App. 4th 612, 628 (1992).

The Appellee is further barred from such equitable relief because of

its claim to an existing contract between it and Warren.  A "valid and

enforceable written contract governing a particular subject matter ordinarily

precludes recovery in quasi contract for events arising out of the same subject matter." *Prickett v. New York Life Ins. Co.*, 896 F. Supp. 2d 236, 249 (S.D.N.Y. 2012) (quoting *U.S. East Telecomm., Inc. v. U.S. West Commc'n Servs, Inc*., 38 F.3d 1289, 1296 (2d Cir.1994) (quotation omitted)). "This is true whether the contract is one between parties to the lawsuit, or where one party to the lawsuit is not a party to the contract." *Prickett*, 896 F. Supp. 2d at 249 (quoting *Granite Partners, L.P. v. Bear, Stearns & Co.*, 17 F. Supp. 2d 275, 311 (S.D.N.Y. 1998)).   Once again, neither the Appellee nor the District Court offer any authorities in contradistinction of those already set forth herein.

> **7.     The District Court's authority to proceed is defeated by the arbitration clause.**

Again without citation to any authorities in support, the District Court appears to have found that Appellant Warren has waived arbitration.  "[A] defendant in a pending lawsuit may file a petition or motion to compel arbitration ***in lieu of an answer to the complaint***".  *Lamkin v. Morinda Props. Weight Parcel, LLC*, 440 Fed. Appx. 604, 607 (10th Cir. 2011) (quoting Jay A. Grenig, ALTERNATIVE DISPUTE RESOLUTION § 23:3 at 574 (3d ed. 2005) and citing *Green Tree Fin. Corp. v. Randolph,* 531 U.S. 79, 83 (2000); *Davis v. S. Energy Homes, Inc.,* 305 F.3d 1268, 1270 (11th Cir.

2002)) (emphasis added).  No Answer has been filed by any Appellant in any proceeding and absent such, there has been insufficient acquiescence to the litigation to waive arbitration.

> "Mere 'participation' in a lawsuit is probably not enough to support a finding of waiver . . . 'active' participation or 'other action inconsistent with [the] right to arbitration'" is required before a finding of waiver can be made.  *Hercules & Co. v. Beltway Carpet Serv., Inc.*, 592 A.2d 1069, 1075 (D.C. 1991) (citation omitted).

*Woodland L.P. v. Wulff*, 868 A.2d 860, 864 (D.C. 2005) (parallel citations omitted).  Accord, *Shorts v. Parsons Transp. Group, Inc.*, 679 F. Supp. 2d 63, 67 (D.D.C. 2010).

These authorities are clearly inapposite to and in conflict with the District Court's conclusion that Warren's initial challenges to these claims waived the arbitration clause, particularly where ***Warren had yet made no challenge whatsoever to the contract itself before moving to compel arbitration***.  See Hr'g Tr. at 31 (Warren would now have been in default on the breach of contract claim had she not moved to compel arbitration).  The District Court appears to claim it has made no such decision, but its imposition of a profoundly burdensome injunction demonstrates to the contrary.

### 8.    The Appellant failed to demonstrate it will be irreparably harmed absent this injunctive relief.

"In considering whether to issue a preliminary injunction, 'the most important inquiry is that concerning irreparable injury.'" *Zirkle v. District of Columbia*, 830 A.2d 1250, 1256 (D.C. 2003) (quoting *Wieck v. Sterenbuch*, 350 A.2d 384, 387 (D.C. 1976)).  "An injunction should not be issued unless the threat of injury is imminent and well-founded, and unless the injury itself would be incapable of being redressed after a final hearing on the merits." *Zirkle*, 830 A.2d at 1256 (D.C. 2003) (quoting *Wieck*, 350 A.2d at 387). "Mere injuries, however substantial, in terms of money, time, and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim or irreparable harm." *Zirkle*, 830 A.2d at 1257 (quoting *Virginia Petroleum Jobbers Ass'n v. Federal Power Commission*,  259 F.2d 921, 925 (D.C. Cir. 1958)).

District Title insinuates some sort of irreparable harm, but falls short under the standards of District of Columbia law for what constitutes a purely economic harm.  *Zirkle*, 830 A.2d  at 1257 (quoting *District of Columbia v. Group Insurance Administration*, 633 A.2d 2, 23 (D.C. 1993) ("economic loss does not, in and of itself, constitute irreparable harm, unless the loss

threatens the very existence of the movant's business" (citations and internal

quotation marks omitted))).   "[M]ere economic loss which will not support a

finding of irreparable injury.  *Wisconsin Gas Co. v. Federal Energy*

*Regulatory Com.*, 758 F.2d 669, 675 (D.C. Cir. 1985) (citing *Virginia*

*Petroleum Jobbers Ass'n*, 259 F.2d at 925).   Of course, only the mortgage

company, and not the Appellee settlement company, has any cognizable

claim of an economic loss and the mortgage company has not sued anyone.[2]

The Appellee is left with some profoundly tortured type of defamation

claim that its reputation will be harmed if the Appellants do not immediately

remedy what the Appellee ***admits is its own error***.  If District Title made a

unilateral mistake in a real estate closing of the scale it alleges, it certainly

should be "under increased scrutiny and/or is subject to legal exposure

from its title insurance underwriter, its errors and omissions carrier, and

the lender to whom the funds should have been wired".  *Id.*   None of this

error is the Appellants' fault or responsibility.  If District Title was as

careless as to initially make such an error, the Appellants certainly are not

now compelled to accept District Title's  summary allegations regarding its

---

[2]As amply demonstrated by the Joint Appendix, rather than ever addressing
how it was economically harmed, the Appellee chose instead to jam the
docket full of endlessly repetitive filings of the same handful of exhibits,
without any explanation as to their import or how filing them yet again with
the District Court somehow enhanced their otherwise dubious probative
value.

unilateral claimed correction.  The Appellants demand a complete

accounting of such funds, an assurance that they will not be held doubly

liable for any mortgage payoff by other parties and properly assert they are

entitled to hold District Title to its burden of proof on any evidentiary

issue herein.

      "The usual rule is that equity does not enjoin a libel or slander and

that the only remedy for defamation is an action for damages." *Community*

*for Creative Non-Violence v. Pierce*, 814 F.2d 663, 672 (D.C. Cir. 1987)

(internal citation omitted).  District Title fails to identify any false statement

by any Appellant and further fails to demonstrate that the proximate cause of

its present woes are of any fault but its own.   Its damage to its reputation is

of its own doing *and apparently well-deserved*.  "A defendant's statements

must also be shown to be false by a preponderance of the evidence – truth is

a complete defense to defamation."  *Moldea v. New York Times Co.,* 15 F.3d

1137, 1142 (D.C. Cir. 1994) (citing *Liberty Lobby, Inc. v. Dow Jones & Co.,*

838 F.2d 1287, 1292 (D.C. Cir.) *cert. denied,* 488 U.S. 825 (1988)).  But see

*DiBella v. Hopkins*, 403 F.3d 102, 114-115 (2d Cir. 2005), asserting that

majority of jurisdictions require even higher standard of clear and

convincing proof of falsity).  Evidence that it was a plaintiff's own conduct

that damaged its reputation must be considered in mitigation.  *Marcone v.*

*Penthouse Int'l Mag. for Men*, 754 F.2d 1072 (3d Cir. 1985); *Bularz v.*

*Prudential Ins. Co.*, 93 F.3d 372, 378-79 (7th Cir. 1996).  Embarrassment

and inconvenience are not irreparable harm.  *United Mine Workers v.*

*International Union, United Mine Workers*, 412 F.2d 165, 167 (D.C. Cir.

1969).


> **9.     An injunction demanding the complete cessation of all financial activity of two persons is profoundly harmful to them.**

The purpose of a preliminary injunction is merely to preserve the

relative positions of the parties until a trial on the merits can be held.  *St.*

*Thomas - St. John Hotel & Tourism Ass'n v. Virgin Islands*, 357 F.3d 297,

301 (3d Cir. 2004) (quoting *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395

(1981)).  The District Court's demand that two individuals ***completely cease***

***all ordinary economic activity***, however unrelated, simply because the

Appellee has a pending claim for monetary damages against them and due to

a non-party for events not of the Appellants' causing is outrageous.  The

economic harm to the Appellants is immediately irreparable to them and

"without recourse".  *Arkansas Dairy Coop., Inc. v. United States Dep't of*

*Agric.*, 576 F. Supp. 2d 147, 161 (D.D.C. 2008).

Permitting a plaintiff to paralyze a defendant economically or send him or her into some bizarre court receivership every time a monetary claim arose destroys any notion of due process incumbent upon these proceedings. Certainly the District Court has greater priorities than to manage the affairs of elderly and infirm Warren or the distantly residing Day for the pendency of these proceedings. The terms of the Preliminary Injunction are ill-reasoned, burdensome and without the support of the remotest authority on point.

**10.      The granting of an injunction was not in the public's interest.**

As already set forth, the Appellee made no allegation of any affirmative act by the Appellants which led to the purported incorrect calculation of a disbursement to Appellant Warren. By the Appellee's own allegations, the mistake was entirely of its own doing. No public interest lies in enjoining the ordinary economic activities of these Appellants where no illegal conduct transpired prior to the Appellee's mistake and there is no further harm which could transpire in any like manner. Absent a demonstration of some fraud or other illegal act by the Appellants causing such injury, the public interest is not served by prohibiting other activities

which did not cause the claimed injury.

## VI.    Conclusion

For these reasons, and for such other reasons as the Court finds to be good and sufficient cause, the Appellee's Preliminary Injunction should be VACATED and the matter DISMISSED WITH PREJUDICE for lack of standing and for failure to state a claim for which relief can be granted.

Respectfully submitted, this ninth day of April, 2015.

_____
Matthew August LeFande
Attorney at Law PLLC
4585 North 25th Road
Arlington VA 22207
Tel: (202) 657-5800
Fax: (202)318-8019
email: matt@lefande.com
Attorney for the Appellants
DC Bar #475995

**Certificate of Compliance with Rule 32(a)**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,850 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using OpenOffice Writer in Times New Roman 14 point font.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and complete copy of the foregoing Motion to Stay was served via electronic filing upon the Appellee's counsel this ninth day of April, 2015.

_____
Matthew August LeFande