# UNITED STATES COURT OF APPEALS
### for the
## DISTRICT OF COLUMBIA CIRCUIT

———————————————

## No. 14-7196

———————————————

## DISTRICT TITLE, A CORPORATION,

### Appellee,

### v.

## ANITA WARREN, FORMERLY KNOWN AS ANITA K. DAY, AND TIMOTHY DAY

### Appellants.

———————————————

## APPEAL OF PRELIMINARY INJUNCTION
### From the
## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

———————————————

## BRIEF OF APPELLEE
———————————————

David H. Cox (# 250167)
JACKSON & CAMPBELL, P.C.
1120 20th Street, NW, South Tower,
Ste. 300
Washington, DC 20036
(202) 457-1600
(202) 457-1678 (fax)
dcox@jackscamp.com
*Counsel for Appellee*

## <u>CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES</u>

The Appellee, District Title, a Corporation, by and through counsel, pursuant to D.C. Circuit Rule 28, hereby submits this Certificate as to Parties, Rulings, and Related Cases.

**(A)** **Parties and Amici**: Appellee District Title, a Corporation; and Appellants Anita Warren (formerly known as Anita K. Day) and Timothy Day.

**(B)** **Rulings Under Review**: The Order of Judge Amy Berman Jackson dated December 15, 2014 (Dkt. #21) granting District Title's Motion for Preliminary Injunction.

**(C)** **Related Cases**: The case on review was previously before the Superior Court of the District of Columbia as *District Title v. Anita K. Warren, et al.*, Civil Action 2014 CA 005523 B, but was removed by the Appellants to the United States District Court for the District of Columbia.  There are not "any other related cases" pending before "any other court" as those terms are defined within D.C. Circuit Rule 28 (a)(1)(C).

## APPELLEE DISTRICT TITLE'S
## RULE 26.1 CERTIFICATE

Appellee, District Title, a Corporation, by and through counsel and pursuant

to Rule 26.1, hereby certifies that District Title has no parent companies,

subsidiaries or affiliates which have publicly traded outstanding shares.  District

Title is a District of Columbia Corporation in the business of conducting real estate

settlements.

TABLE OF CONTENTS

I.     Certificate as to Parties, Rulings, and Related Cases……………......i.

II.    Rule 26.1 Certificate……………………………………………...ii.

III.   Table of Contents……………………………………………...iii.

IV.    Table of Authorities……………………………………………v.

V.     Statement of the Case……………………………………......1

VI.    Summary of the Argument…………………………………….5

VII.   Argument………………………………………………...10

        1.  Standard of Review………………………………………...10

        2.  District Court Did Not Lack Jurisdiction………………………..10

             a.  Appellants Not Likely to Prevail on Service of Process….11

             b.  Personal Jurisdiction Exists Over Day……………………13

             c.  Appellee Has Constitutional Standing……………………17

             d.  Arbitration Provision and Pending Motion Do Not Bar
                 Order for Preliminary Injunction…………………………18

        3.  Preliminary Injunction Correctly Granted………………………19

             a.  District Title Irreparably Harmed…………………………20

             b.  District Title Likely to Prevail on Merits…………………22

                  i.   Claims for Conversion and Trover…………………23

                  ii.  Equitable Claims Do Not Fail………………………24

         c.  Balance of Equities Favors District Title…………...………26

         d.  Public Interest Favors District Title………………………...27

VIII.  Conclusion………………………………………………….29

IX.    Certificate of Compliance………………………………….30

X.     Certificate of Service………………………………………..30

iv

# TABLE OF AUTHORITIES

## Cases:

*Armenian Assembly of Am., Inc. v. Cafesjian,* 597 F.Supp.2d 134
(D.D.C. 2009)……...……………………………………….……....25

*Calvetti v. Antcliff*, 346 F.Supp. 2d 92, 106 (D.D.C. 2004)...……….........23

*CapitalKeys, LLC v. Ciber, Inc.,* 875 F.Supp.2d 59, 65 (D.D.C. 2012)…26

\*     *Chaplaincy of Full Gospel Churches v. England,* 454 F.3d 290
(D.C.Cir. 2006)………………………………………………….…..19-20

*Chase Manhattan Bank v. Burden,* 489 A.2d 494 (D.C. 1985)…………..23

\*     *CityFed Financial Corp. v. Office of Thrift Supervision*, 58 F.3d 738
(D.C. Cir. 1995)……..…………………………………………….……19

*Cobell v. Norton,*  391 F.3d 251 (D.C. Cir. 2004)………………………..19

*Crane v. Carr,*  814 F.2d 758 (D.C. Cir. 1987)…………………………..15

*Crane v N.Y. Zoological Soc'y,* 894 F.2d 454 (D.C. Cir. 1990)………....10

*Curaflex Health Serv., Inc. v. Bruni,* 877 F.Supp. 30 (D.D.C. 1995)…….23

\*     *Davis v. Pension Benefit Guar. Corp.,* 571 F.3d 1288 (D.C. Cir. 2009)…20

\*     *District 50, United Mine Workers of America v. International Union,
United Mine Workers of America,* 412 F.2d 165 (D.C. Cir. 1969)……….27

\*     *Etchebarne-Bourdin v. Radice,* 982 A.2d 752 (D.C. 2009)……………....15

*Friends of the Earth v. Laidlaw Envtl. Servs.,* 528 U.S. 167 (2000)…....…6, 17

*Hasse v. Sessions,* 835 F.2d 902 (D.C. Cir. 1987)……………………..….17

*Khatib v. Alliance Bankshares Corp.,* 846 F.Supp.2d 19 (D.D.C. 2012)…10

*MicroStrategy, Inc. v. Motorola, Inc.,* 245 F.3d 335 (4th Cir. 2001)……..19

*Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060 (D.C. Cir. 1998)..19

*News World Commc'ns, Inc. v. Thompsen,* 878 A.2d 1218 (D.C. 2005)….25

*Plesha v. Ferguson,* 725 F.Supp.2d 106 (D.D.C. 2010)…………………..25

\*   *Sherley v. Sebelius,* 644 F.3d 392 (D.C. Cir. 2011)………………………19

*Sterling Commercial Credit – Michigan, LLC v. Phoenix Industries I, LLC,* 762 F.Supp.2d 8 (D.D.C. 2011)………………………………….20-21

*Venison v. Robinson,* 759 A.2d 906 (D.C. 2000)…………………………12

*Villa v. Inter-American Inv., Corp.,* 570 F.3d 274 (D.C. Cir. 2009)………25

\*   *Washington Metropolitan Area Transit Comm'n v. Holliday Tours, Inc.,* 559 F.2d 841, 843 (D.C. Cir. 1977)………………………………20-21

**Statutes:**

D.C. Code Section 13-422…………………………………….…………13

D.C. Code Section 13-423……………………………………………..13-15

**Rules:**

D.C. Superior Court Rules of Civil Procedure Rule 4……………………11

Federal Rules of Civil Procedure Rule 4…………………………………12

Federal Rules of Civil Procedure Rule 65……………………….....……19

## STATEMENT OF THE CASE

District Title, a Corporation (hereinafter "District Title" or "Plaintiff"), a real estate settlement company, conducted a real estate settlement on July 7, 2014 to transfer improved real property in the District of Columbia known as Lot 16 in Square 3650 that has the address of 3205 7th Street, N.E., Washington, DC 20017 (the "DC Property). The DC Property was owned at that time by Anita K. Warren (also-known-as Anita Day), and was encumbered by Deed of Trust securing a Note payable to Wells Fargo Bank, N.A. (hereinafter, from time to time, "the Mortgage Lender") in the original principal amount of $544,185.00. A second Deed of Trust securing the Secretary of Housing and Urban Development in the amount of $544,185.00 also encumbered the DC Property for the same note.

At the time of the July 7, 2014 settlement, the total amount due and owing on the secured note and the Deeds of Trust was $293,514.44. Anita K. Warren and Timothy Day (hereinafter, "Warren" and "Day" respectively, or "Defendants" collectively) were fully aware that the Property was encumbered by the Deeds of Trust, and both attended the real estate settlement. See Joint Appendix p. 66.

After the settlement, the funds to payoff the Mortgage Lender were mistakenly wired by District Title to Warren instead of the Mortgage Lender. See Joint Appendix p. 139. Defendants were both fully aware that they were not entitled to the mistakenly wired funds. As soon as the error was discovered,

District Title communicated with Day regarding the mistaken wire and requested return of the funds.  See Order p. 139.  Day, in response to an August 12, 2014 email concerning the mistakenly wired funds stated "[w]hat is (sic) I was a healthy person and spent the money?".  See Joint Appendix p. 94.  Following the email communication of August 12, 2014, District Title made additional attempts to communicate with Timothy Day on August 21, 22, and 27, 2014.  See Joint Appendix p. 72.  However, Timothy Day did not respond.

Promptly upon learning of the wiring error, District Title also contacted Warren to request a return of the funds.  At that time, Steven Sushner, President of District Title, was informed by Warren that Day had instructed Warren to provide the funds to him.  See Joint Appendix p. 67.  In a telephone conversation of August 28, 2014, Warren acknowledged to Steven M. Sushner that she was not entitled to the funds, and further informed me that her son, Day, had instructed her to divert the funds so as to conceal them from District Title.  See Joint Appendix p. 67.

Upon information and belief, on or about July 11, 2014, Warren, acting pursuant to the instructions of Day, caused a Cashier's Check in the amount of One Hundred Thousand Dollars ($100,000.00) to be made payable to Timothy Day and Anthony Silva. See Joint Appendix p. 139. That Cashier's Check was then deposited, on or about July 11, 2014, into a bank account controlled by Anthony Silva and Suzanne Silva, Day's aunt and uncle.  See Joint Appendix p. 139.  The

2

funds from the Cashier's Check referenced above were used in part by the Silvas on or about July 25, 2014 to purchase real property in Worcester County, Maryland having the address of 6 Boston Drive, Berlin, MD 21811.  See Joint Appendix p. 139.[1]

Instead of returning the funds as requested by District Title, Day, being fully aware that he and his mother were not entitled to the mistakenly wired funds, acted quickly and in bad faith to disburse the funds or otherwise conceal them.  He purchased real estate in Worcester County, Maryland having the address of 3 Boston Drive, Berlin, MD 21811 using funds belonging to the District Title.  See Joint Appendix p. 140.

Additionally, after being served with the summons and Complaint initially filed in the Superior Court of the District of Columbia, Day cashed two Cashier's Checks with America's Cash Express from the funds in the respective amounts of Thirty-three Thousand Dollars ($33,000.00) and Thirty-three Thousand Four Hundred Forty-five Dollars ($33,445.00).  See Joint Appendix pp. 115 and 116. This was done, upon information and belief, in addition to Day cashing a Cashier's Check in the amount of Thirty-three Thousand Dollars ($33,000.00) on or about August 27, 2014.  See Joint Appendix p. 114.

---

[1] An action was filed in the Circuit Court of Worcester County, Maryland by District Title on September 5, 2014 against Anita Warren, Timothy Day, Suzanne Silva and Anthony Silva as action 23-C-14001158.  That action is currently stayed pending resolution of this action.

Defendants, since erroneously receiving District Title's funds and being on notice of the need to return them, continuously exhibited a pattern of bad faith, concealment, and other nefarious behavior evincing a complete and utter disregard for District Title's rights and the law.  To bring this nefarious behavior to an end, District Title requested that the District Court enter a preliminary injunction.  The Court heard and granted the District Title's request, finding that District Title is likely to prevail on the merits and suffer irreparable harm, while any harm to Defendants is far outweighed by the harm faced by District Title.  Additionally, the Court held that public interest favors the grant of the preliminary injunction.

## SUMMARY OF THE ARGUMENT

District Title filed a Motion for Preliminary Injunction to enjoin the further dissipation of funds that had been mistakenly wired to Warren, who then acted in concert with her son, Day, to convert those funds to their own uses.  The purpose of the Motion for Preliminary Injunction and the relief sought was to ensure that funds would be recoverable when District Title prevailed on the claims for breach of contract, trover and conversion, and other equitable relief set forth in its Amended Complaint.

Any purported jurisdictional issues regarding the issuance of the preliminary injunction order should be addressed first.  Warren and Day contend that there are numerous jurisdictional defects that act to bar the Court's order entering a preliminary injunction.  Their jurisdictional arguments are without merit.  It is clear that the Court has personal and subject matter jurisdiction over this matter and these individuals.

Day alleges that he was not properly served in the case, and that the Court lacks personal and subject matter jurisdiction over him.  The record clearly establishes that it is more likely than not that Day was properly and timely served.  Even if the initial service of process on Day was somehow defective, he was nevertheless timely served by alternative service pursuant to the provisions of the Federal Rules of Civil Procedure.  The District Court may also enter an order

5

granting a preliminary injunction when it appears that the establishment of jurisdiction is reasonably probable.

Day also argues that the Court lacked subject matter jurisdiction. However, Day confuses subject matter jurisdiction with personal jurisdiction in advancing such arguments. The District of Columbia long-arm statutes upon which Day relies to contest subject matter jurisdiction are statutes for the exercise of personal jurisdiction over parties, not limits on subject matter jurisdiction. Not only were the requirements of the long-arm statute (D.C. Code §13-423) met, District Title also established that Day had sufficient minimum contacts with the District of Columbia.

Defendants also contest District Title's Constitutional standing in bringing its Amended Complaint as an additional jurisdictional issue, and argue that an arbitration provision bars grant of the preliminary injunction. District Title has standing to bring its claims because it has established that it has suffered injuries in fact that are clearly traceable to the Defendants' actions. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.,* 528 U.S. 167, 180-81 (2000). District Title has clearly articulated a claim for breach of contract against Warren plainly alleging an injury in fact traceable to Warren's actions. Additionally, the other claims set forth by District Title clearly establish that Defendants' actions in refusing to return the funds have placed District Title in the path of imminent and concrete particularized

6

harm.  Regarding the arbitration provision, the Court has made no ruling on the pending motion to compel arbitration, so that issue is not ripe for consideration.

Much like Defendants' jurisdictional claims, their arguments against the grant of the preliminary injunction order also fall short.   The grant of a preliminary injunction is indeed a high standard to meet, but it is one that District Title met.

In order for a preliminary injunction to be granted, District Title was required to establish: (1) the likelihood of irreparable harm to District Title if the injunctive relief were denied; (2) the likelihood of harm to the Defendants if the injunctive relief were granted; (3) the likelihood that District Title would succeed on the merits; and (4) that the public interest favored District Title.  Each of the four factors weighed in favor of District Title.

District Title filed the motion for preliminary injunction to prevent further harm from being inflicted upon it by the Defendants' continued refusal to return the funds and the current dissipation of those funds.  Absent a preliminary injunction, Defendants' actions to dissipate and conceal the funds would likely continue.  Defendants present no argument regarding the recoverability of any economic losses by District Title or the threat to its business other than one sentence regarding District Title's standing.  Instead, Defendants choose to base their arguments on District Title's business reputation, which the District Court

found was not an irreparable harm suffered by District Title.  Absent any substantive argument regarding the irreparable harm found to exist, the Defendants have failed to produce any ground upon which the preliminary injunction could be overturned on that basis.

District Title is likely to prevail on the merits.  The Court found that Defendants "essentially conceded that [District Title's] breach of contract claim against [Warren] is likely to succeed on the merits.  See Joint Appendix p. 151. As for the other claims, trover and conversion, unjust enrichment, and other equitable claims, District Title is likely to prevail on those as well.

As to the claim for trover and conversion, District Title established that there was a specific identifiable fund of money that was transmitted to Warren.  Funds were then transferred to Day, which can be clearly traced to the funds mistakenly wired.  It's also clear that Defendants were not entitled to those funds, have knowledge that they were not entitled to those funds, and have wrongly refused to return those funds.  Based upon those known facts, District Title is likely to prevail on its claim for trover and conversion.

Likewise, District Title is likely to prevail on its claims for unjust enrichment and other equitable relief.  Warren may ultimately prevail on the claim for unjust enrichment against her due to the existence of a contract between her and District Title.  However, there is no such contract between Day and District

Title that would bar such a claim, and Defendants have provided no authority in this Circuit for extending such a bar to defendants not a party to a contract. Additionally, there is no legitimate basis for arguing that the funds to which Defendants had no right, title or interest cannot be traced to Day. To make such an argument is contrary to the evidence currently available.

The equities and public interest also balance heavily in District Title's favor. While the harm faced by District Title absent a preliminary injunction is great, the potential harm to Defendants is minimal. The preliminary injunction does not result in a complete cessation of all financial activity of Defendants, nor is it profoundly harmful to them. The preliminary injunction merely preserves the status quo. The public also has a profound interest in assuring that money is not wrongfully withheld and wasted by persons to whom those funds do not belong.

The Court below correctly entered a preliminary injunction in favor of District Title. It did so within its proper jurisdiction and without exceeding its authority. Also, in weighing the merits and balancing the equities, the Court did not abuse its discretion.

**ARGUMENT**

## I.     STANDARD OF REVIEW

The Court of Appeals reviews determinations regarding jurisdiction *de novo.*
Questions concerning the weighing of the factors in regards to a preliminary
injunction are reviewed for abuse of discretion.  Questions of law underlying the
district court's decisions in granting or denying a motion for preliminary injunction
are reviewed *de novo*.

## II.     THE DISTRICT COURT DID NOT LACK JURISDICTION TO ENTER THE PRELIMINARY INJUNCTION ORDER.

Since jurisdiction is a prerequisite to the exercise of a Court's authority,
District Title first addresses the Defendants' jurisdictional claims.  The burden was
on Plaintiff to establish a basis for personal jurisdiction over a defendant.  *Crane v.
N.Y. Zoological Soc'y,* 894. F.2d 454, 457 (D.C. Cir. 1990).  This burden may be
met by showing "a reasonable probability that personal jurisdiction can ultimately
be established."  *Khatib v. Alliance Bankshares Corp.,* 846 F. Supp.2d 19, 26
(D.D.C. 2012); quoting *U.S. Secs & Exch. Comm'n v. Lines Overseas Mgmt., Ltd.,*
2005 WL 3579139, at *2 (D.D.C. Jan. 4, 2006).

Defendants argue, in multiple sections of their brief, that the District Court
lacked personal jurisdiction over Day or lacked the requisite jurisdiction to grant
the preliminary injunction for varied reasons, including an arbitration provision.

10

Defendants argue that this purported lack of jurisdiction is a complete bar to the injunctive relief granted. Despite Defendants' arguments to the contrary, the District Court was vested with jurisdiction to enter the preliminary injunction.

## A. Defendants are Not Likely to Prevail on Service of Process Issue

Timothy Day has alleged that service was not properly effected upon him, and therefore the Court lacked personal jurisdiction as to him when the appealed order was entered. Despite Defendants' arguments to the contrary, they are not likely to prevail on the service of process issue.

The record shows that service or process was made on Day by substitute service of process on September 6, 2014. D.C. SCR-4(e)(2) provides that service may be made "by delivering a copy of the summons, complaint, and initial order to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein…." The affidavits of service state that service was made by serving an adult white male who stated that he resided at the 3 Boston Drive property with Day. <u>See</u> Joint Appendix at pp. 110 and 111. Day's residence is the 3 Boston Drive property. <u>See</u> Joint Appendix p. 136.

There is a presumption of truth attached to statements contained within a process server's return. In order to overcome such presumption, the party denying service must present "strong and convincing evidence" that he was not properly

11

served. *Venison v. Robinson,* 759 A.2d 906, 910 (D.C. 2000). Prior to the hearing on the preliminary injunction request held on December 12, 2014, Day had presented no affidavit or declaration supporting any allegations that service was ineffective. Only after the hearing was conducted, did Day submit any supporting documentation to the bald allegations concerning service of process. See Joint Appendix pp. 136 and 137. Neither is sufficient to overcome the presumption of truth of the statements contained in the affidavits of service.

Upon removal of the action to the United States District Court for the District of Columbia, the Federal Rules of Civil Procedure govern the action. Once the case was removed, the time for service of process was extended by 120 days. See Fed. R. Civ. P. 4(m). Because the case was removed on October 29, 2014, the deadline for service was February 26, 2015. Prior to February 26, 2015, District Title moved in the District Court for alternative service as to Day. That request was granted on March 13, 2015, permitting alternative service of process on Day by posting and mailing. See Joint Appendix p. 6. An affidavit of service regarding service by alternative means was filed with the District Court on March 26, 2015. See Joint Appendix p. 6.

Defendants have not established any facts sufficient to overcome the presumption that service was properly made upon Day, nor have they demonstrated that, even if the prior service of process was ineffective, personal

12

jurisdiction over Appellant Day was not ultimately established rendering any such argument moot.

**B. <u>Personal Jurisdiction Exists Over Day</u>**

Day argues that the Court lacks subject matter jurisdiction, but his arguments speak to personal jurisdiction and not subject matter jurisdiction.  Day alleges that the Court cannot exercise jurisdiction over him pursuant to *D.C. Code* Sections 13-422 or 13-423.  D.C. Code Section 13-422 provides for personal jurisdiction over any party "domiciled in, organized under the laws of, or maintaining his or its principal place of business, in the District of Columbia as to any claim for relief."  Section 13-423 is the District of Columbia "long-arm" statute for personal jurisdiction, which provides numerous bases for jurisdiction.

District Title has not alleged that personal jurisdiction is founded under *D.C. Code* Section 13-422.  The basis for personal jurisdiction over Day is *D.C. Code* Section 13-423, which the Court correctly found to be a basis for the proper exercise of jurisdiction.

There are multiple circumstances under which the Court may properly exercise personal jurisdiction over Day pursuant to Section 13-423. Section 13-423 provides that:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's -

13

(1) transacting any business in the District of Columbia;…

(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;…

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;…

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

Day was intimately involved in the sale of the DC Property, which constitutes transacting business in the District of Columbia.  For example,  Day communicated on multiple occasions with employees of District Title regarding the settlement.  Upon information and belief, Day also attempted to obtain payoff numbers of the note secured against the DC Property from Wells Fargo.  See Joint Appendix p. 121.  He also attended the settlement on July 7, 2014.  See Joint Appendix 121. Additionally, it is that business transaction (the sale of the DC Property) from which the claims set forth in District Title's Amended Complaint arise.

Even if the Court were to find that Timothy Day did not transact business in the District of Columbia, it is evident that he committed an act outside of the District of Columbia which caused tortious injury in the District of Columbia.

14

Pursuant to Section 13-423(a)(4), jurisdiction is proper where an act outside of the District of Columbia causes tortious injury in the District of Columbia, and the claim arises from the act and injury, no nexus needs to be proven between the claim and the persistent course of conduct. *Etchebarne-Bourdin v. Radice,* 982 A.2d 752, 761 (D.C. 2009).   The persistent course of conduct requirement is a plus factor, which "simply serve[s] to filter out cases in which the in forum impact is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum." *Crane v. Carr,* 814 F.2d 758, 763 (D.C. Cir. 1987).

In this matter, there was an act or acts outside of the District of Columbia which gave rise to the tortious injury in the District of Columbia, namely those actions that gave rise to the trover, conversion, and unjust enrichments claims set for in District Title's Amended Complaint.  Defendant Day has acted consistently and repeatedly to deny Plaintiff the return of its funds, and has undertaken acts to hide those funds, including the purchase of real property in Worcester County, Maryland and the negotiation of cashier's checks.  See Joint Appendix pp. 91-93, 97, and 139-140.

Day has a demonstrable persistent course of conduct in the District of Columbia.[2]  He participated in the sale of the DC Property as demonstrated above,

---

[2] Additionally, Timothy Day, at least while some of the actions he has undertaken to harm District Title were made, still possessed and used a driver's license issued

15

and has admittedly practiced as a CPA in the District of Columbia.  See Joint

Appendix p.149.  Day cannot set forth any probable argument that his affiliations

with the District of Columbia are none or scant.

Additionally, the Defendants admitted that the District of Columbia was the

proper forum for the proceeding.  Defendants, through their Maryland counsel,

stated to the Court in Worcester County, Maryland that the District of Columbia is

the proper jurisdiction/venue for the claims raised.  Defendants alleged, in the

Maryland Motion to Dismiss that all of the acts complained of incurred entirely in

the District of Columbia.  See Joint Appendix p. 149 fn 3.  Defendants further

stated that "[s]hould the Plaintiff have cognizable claims, they are best heard in the

District of Columbia…."  See Joint Appendix p. 82.  The proposed Order for the

Maryland Motion to Dismiss submitted by Defendants also states that the "matter

is more properly heard in the District of Columbia where a nearly identical

Complaint is already pending before the Courts there.  See Joint Appendix p. 87.

The Maryland Motion to Dismiss should be interpreted as an admission that

jurisdiction is properly vested in the District Court to hear this matter.

_____

by the District of Columbia Department of Motor Vehicles.  See Joint Appendix p.
77.

C. **Appellee Has Constitutional Standing**

In order to establish Constitutional standing, a plaintiff must show that: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.,* 528 U.S. 167, 180-181 (2000). As detailed below, District Title has suffered an injury in fact that is actual or imminent and is traceable to the actions of Defendants.

In analyzing jurisdictional issues, the Court looks to the face of the Complaint. *Haase v. Sessions,* 835 F.2d 902, 908 (D.C. Cir. 1987). In its Complaint, District Title pled a breach of contract claim against Warren, and claims for conversion and trover, unjust enrichment, and other equitable and injunctive relief against both Defendants.

Any question concerning District Title's standing to bring the claim for breach of contract against Warren is simply answered. The claim for breach of contract is clearly an allegation of an injury in fact traceable to the actions of Warren.

Similarly, the remainder of District Title's claims against Defendants allege an injury in fact that is "imminent", "concrete and particularized", and traceable to

17

the actions of the Defendants. Defendants base their argument regarding District Title's alleged lack of Constitutional standing solely on the status of Wells Fargo Bank as mortgage lender on the loan for which payoff funds were mistakenly wired to Warren. <u>See</u> Defendants' Brief p. 10. They do not argue that the money was not received and disbursed by Defendants, nor do they present any evidence that District Title is not exposed to liability for the mistakenly wired funds. In fact, there is no question that the Defendants received and used those funds for their own purposes, and that, to date, they have failed to return those funds. District Title has sufficiently pled injuries in fact that are clearly traceable to Defendants' actions sufficient to establish Constitutional standing.

## D. <u>The Arbitration Provision and Pending Motion to Compel Do Not Bar an Order for Preliminary Injunction</u>

In regards to Defendants' other alleged claim regarding jurisdiction, there is no basis for the preliminary injunction order to be vacated based upon any arbitration clause. The Court has not ruled upon Warren's pending motion to compel arbitration, despite Defendants' contrary belief. The Court merely stated that it was not necessary to address the motion to compel arbitration to decide District Title's motion for preliminary injunction.

### III.   THE DISTRICT COURT CORRECTLY GRANTED PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Requests for injunctive relief are governed by Fed. R. Civ. P. 65.  Motions brought under Rule 65 are assessed by a well-known test applying four factors: (1) the likelihood of irreparable harm to the movant if the injunctive relief is denied; (2) the likelihood of harm to the defendants if the injunctive relief is granted; (3) the likelihood that the movant will succeed on the merits; and (4) the public interest.  See *CityFed Financial Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995); *Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998).  See also *MicroStrategy, Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001).  The purpose of a preliminary injunction "is merely to preserve the relative positions of the parties" until the case is resolved.  *Chaplaincy of Full Gospel Churches v. England,* 454 F.3d 290, 297 (D.C. Cir. 2006) (quoting *Univ. of Tex. V. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830 (1981)).  The burden of persuasion in on the party seeking the preliminary injunction.  *Cobell v. Norton,* 391 F.3d 251, 258 (D.C. Cir. 2004).

The District of Columbia Circuit has applied a "sliding scale" approach in evaluation the factors to be considered in deciding a preliminary injunction motion. *Sherley v. Sebelius,* 644 F.3d 392 (D.C. Cir. 2011).  If a movant "makes an unusually strong showing on one of the factors, then it does not necessarily have to

make as strong a showing on another factor." *Davis v. Pension Benefit Guar. Corp., 571 F.3d 1288, 1291-92 (D.C. Cir. 2009).*

## A. <u>District Title Irreparably Harmed</u>

District Title sought a preliminary injunction to ensure that the funds that Defendants refused to return remained recoverable.  There is no allegation or argument set forth by Defendants that, absent a preliminary injunction, the funds would be recoverable by District Title.  Defendants instead focus their argument regarding irreparable harm on the potential damage to District Title's business reputation, which was not a basis upon which the Court found irreparable harm to District Title.  The only counter-argument that Defendants may be suggesting is a reference to the Constitutional standing argument addressed above.  <u>See</u> Defendants' Brief p. 26.

In order to make a showing of irreparable harm, a moving party must satisfy a two part test: (1) the injury must be certain and great, and actual; and (2) the injury must be beyond remediation.  *Chaplaincy of Full Gospel Churches v. England,* 454 F.3d 290, 297 (D.C. Cir. 2006).  Economic harm may qualify as irreparable harm where the harm causes extreme hardship to the business or threatens its existence. <u>See </u>*Washington Metropolitan Area Transit Comm'n v. Holliday Tours, Inc.,* 559 F.2d 841, 843 (D.C. Cir. 1977).  <u>See also</u> *Sterling Commercial Credit – Michigan, LLC v. Phoenix Industries I, LLC,* 762 F.Supp.2d

20

8, 16 (D.D.C. 2011). Economic harm may also qualify as irreparable harm where the injury where damages are unrecoverable. *Sterling Commercial Credit – Michigan, LLC* at 16. The movant must substantiate that the irreparable harm is likely to occur. *Washington Metropolitan Area Transit Comm'n v. Holliday Tours, Inc.* 559 F.2d at 843 n. 3.

The loss of funds and the continued deprivation of those funds by the Defendants have resulted in severe hardship for District Title. See Sushner Affidavit p. 105. As a result of the loss of the funds, District Title has been exposed to the Mortgage Lender for payment of the entire amount due to payoff the loan. District Title is also exposed to liability from the new owner of the DC Property and District Title's commercial lender for its outstanding line of credit. The amount due of nearly $300,000.00 is not a small amount of money, and must be repaid.

District Title sought a preliminary injunction to prevent further harm from being inflicted upon it by the Defendants' continued refusal to return the funds, bad acts, and dissipation of those funds. Absent a preliminary injunction, Defendants' demonstrated and documented actions to dissipate and conceal the funds would likely continue. Defendants have presented no argument regarding the recoverability of any economic losses by District Title or the threat to its business other than one sentence regarding District Title's standing. Defendants

21

have failed to substantiate any valid reason that the basis upon which the Court

based its finding of irreparable harm was incorrect.

**B. <u>District Title Likely to Prevail on Merits</u>**

There is a substantial likelihood that District Title will prevail on its claims

set forth in its Amended Complaint.  The facts set forth therein demonstrate that

Defendants had no right to District Title's funds, that the Defendants acted to

convert those funds to their own use, and that Defendants engaged in a pattern of

bad faith.  Further, Anita K. Warren acknowledged to District Title that she had no

right to the funds and that Timothy Day, her son, had instructed her to distribute

the funds to him.

District Title's Amended Complaint and its Motion for Preliminary

Injunction set forth ample evidence of Defendants' conversion of District Title's

property and continued nefarious acts.  The record reflects that Defendants know

that they are not entitled to possession of the funds.  <u>See</u> Joint Appendix p. 139.

Warren has acknowledged to the President of District Title that her acts were

wrongful and that she was acting pursuant to the instructions of her son, Timothy

Day.  <u>See</u> Joint Appendix p. 122.  There is a disturbingly consistent pattern of

behavior on behalf of the Defendants to conceal the funds and convert them to

their own use or the use of their immediate family members.  <u>See</u> Joint Appendix

pp. 139-140.  There is no justifiable excuse or equitable consideration that would permit the Defendants to persist in pursuing a pattern of deceit.

### 1.  <u>District Title likely to prevail on claim for trover and conversion.</u>

Conversion is generally defined as "an unlawful exercise of ownership, dominion or control over the personal property of another in denial or repudiation of his rights thereto." *Chase Manhattan Bank v. Burden,* 489 A.2d 494, 495 (D.C. 1985).  Even where the initial possession of property was lawful, a demand for its return may render continued possession unlawful. *Calvetti v. Antcliff,* 346 F.Supp. 2d 92, 106 (D.D.C. 2004).  Money can be the subject of a conversion claim if the Plaintiff has a right to a specific identifiable fund of money. *Curaflex Health Serv., Inc. v. Bruni,* 877 F.Supp. 30, 32 (D.D.C. 1995).

District Title stated in its Amended Complaint that it mistakenly wired the amount of $293,514.44 to a bank account in the name of Warren.  That fact, when accepted as true, establishes a possessory right to funds received by Warren. Those funds were included in a wire in the total amount of $460,926.57.  <u>See</u> Joint Appendix p. 112. The mistakenly wired funds are a specific identifiable fund of money such as that which can be the subject of a conversion claim.

There is no question that the amount of funds disbursed by Warren far exceeded the amount that she was entitled to receive from the sale of the DC Property.  By mid-August 2014, the amount of funds available in the bank account

23

into which they were wired was less than the amount that had been mistakenly

wired.  See Joint Appendix p. 90.   Those available funds were then substantially

reduced on August 20, 2014, when three Cashier's Checks totaling $99,445.00

were made payable to Timothy Day.  See Joint Appendix pp. 91-93.  The issuance

of these checks followed an email exchange of August 12, 2014 between

Jacqueline Baker of District Title and Timothy Day regarding the mistakenly wired

funds.  See Joint Appendix p. 94.  At the time that those cashier's checks were

issued, Day was fully aware that neither he nor his mother were entitled to the

funds.  Despite that knowledge, he converted those funds to his own use.  The

email exchange between Day and Jacqueline Baker also preceded his purchase of

the 3 Boston Drive property with funds wired to him from a bank account in

Warren's name.  See Joint Appendix p. 97.

It is wholly irrelevant whether or not these funds were commingled by

Warren or Day with any other funds in the account.   The funds are specifically

identifiable, and despite demand for their return Defendants have failed to do so.

The District Court correctly found that District Title would likely prevail on its

claims for trover and conversion.

### 2.  District Title's unjust enrichment and equitable claims do not fail.

District Title has set forth claims for unjust enrichment and other equitable

24

relief in its Amended Complaint against both defendants.  "An unjust enrichment is a species of quasi contract that imposes, in the absence of an actual contract, a duty upon one party to requite another in order to a avoid the former's unjust enrichment, to permit recovery by contractual remedy in cases where, in fact, there is no contract." *Villa v. Inter-American Inv., Corp.,* 570 F.3d 274, 279-80 (D.C.Cir. 2009).  A Plaintiff "states a legally cognizable unjust enrichment claim when: (1) the plaintiff confers a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *Armenian Assembly of Am., Inc. v. Cafesjian,* 597 F.Supp.2d 128, 134 (D.D.C. 2009) (citing *News World Commc'ns, Inc. v. Thompsen,* 878 A.2d 1218, 1222 (D.C. 2005)).

Normally, an action for unjust enrichment will fail when there is an express contract between the parties.  *Plesha v. Ferguson,* 725 F.Supp.2d 106 (D.D.C. 2010).  However, Day is not a party to any agreement with Plaintiff.  Defendants have cited no District of Columbia authority holding that an unjust enrichment claim is barred against a non-party to a contract.  Therefore, District Title should be able to proceed with its claim of unjust enrichment against Day.

However, even if the rule of law was that unjust enrichment claims were barred against all parties to litigation if one of the parties were a signatory to a contract, District Title must still be able to proceed with its unjust enrichment and

25

equitable claims.  A party cannot recover on an unjust enrichment claim for activities that are included in an express contract between the parties to that agreement.  *CapitalKeys, LLC v. Ciber, Inc.,* 875 F.Supp.2d 59, 65 (D.D.C. 2012).  Recovery under unjust enrichment is only proper where the alleged unjust enrichment arose out of a contract, such as the rendering of services and failure to pay.  Here, District Title mistakenly wired funds to Warren that she was not entitled to receive.  Defendants then conspired to disburse those funds and convert them to their own use.

District Title has stated a claim for equitable and injunctive relief against Day.  As part of that equitable relief, District Title has requested that it be awarded title to, and possession of any property, real or personal, traceable to the diverted funds.  Day has not set forth any argument, other than the contract argument discussed above, as to why District Title will not prevail in any claim for such additional equitable or injunctive relief against him.  District Title has sufficiently alleged and shown that it is likely that it will prevail on any and all equitable claims against Day.

**C. <u>Balance of Equities Favors District Title</u>**

In direct contrast with the harm suffered by District Title, there is no cognizable harm to Defendants resulting from the grant of injunctive relief.  The preliminary injunction serves to preserve the status quo and prevent Defendants

26

from further distributing or concealing funds to which they have no right or

dissipating assets.  Defendants are not harmed by a mere preservation of the status

quo.

The purpose of a preliminary injunction is to maintain the status quo.

*District 50, United Mine Workers of America v. International Union, United Mine*

*Workers of America,* 412 F.2d 165, 168 (D.C. Cir. 1969).  The District Court

carefully tailored the injunctive relief granted so as to permit Defendants to carry

out their ordinary lives while preserving the status quo.  Defendants had multiple

options for compliance with the preliminary injunction.  <u>See</u> Joint Appendix p.

155.  The language of the Order clearly refutes any argument that the Defendants

were somehow ordered to "completely cease all ordinary economic activity".

Given the continued harm faced by District Title absent the preliminary

injunction the District Court properly found that the equities balanced in District

Title's favor.  The District Court did not abuse its discretion in doing so.

### D. <u>The Public Interest</u>

In this case, the public interest also supports the injunctive relief sought.

District Title has filed its motion for preliminary injunction to prohibit the further

concealment and distribution of funds by Defendants in which they possess no

interest.  The public has a strong interest in preventing the type of wrongful actions

and bad faith pattern of conduct perpetrated by Defendants.  The public interest is

therefore aligned with the basis for District Title's request for injunctive relief.  It

is in the public interest to ensure that money are not misappropriated and dissipated

by persons having no interest in those funds.  The District Court did not abuse its

discretion in balancing the public interest concerns in favor of District Title.

## CONCLUSION

The District Court was correct in exercising jurisdiction and in granting District Title's request for a preliminary injunction against Defendants.  The District Court rightly found that a preliminary injunction should issue because District Title was irreparably harmed, District Title was likely to prevail on the merits of its varied claims, the equities balanced in favor of District Title, and the public interest favored issuance of a preliminary injunction.  In making such findings and entering the preliminary injunction order, the District Court correctly interpreted the law and did not abuse its discretion.  This Court should affirm the District Court's order granting District Title's Motion for Preliminary Injunction.

Respectfully submitted,

David H. Cox (# 250167)
JACKSON & CAMPBELL, P.C.
1120 20th Street, NW, South Tower,
Ste. 300
Washington, DC 20036
(202) 457-1600
(202) 457-1678 (fax)
dcox@jackscamp.com
*Counsel for Appellee*

29

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I hereby certify that:

1.  This brief complies with the type-volume limitation of Fed. R. App.
    P32(a)(7)(B) because this brief contains 6,250 words, excluding the parts of
    the brief exempted by Fed. R. App. P. (32)(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P.
    32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because
    this brief has been prepared in a proportionally spaced typeface using
    Microsoft Word in Time New Roman 14 point font.

David H. Cox (# 250167)

## CERTIFICATE OF SERVICE

I hereby certify that a true and complete copy of the foregoing Appellee's
Brief was served via electronic filing upon the Defendants' counsel this 11th day of
May, 2015, and that two copies of Appellee's Brief were mailed to Defendants'
counsel by first-class mail this 11th day of May, 2015.

David H. Cox (# 250167)